IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MARTHA MCKEE, as Administratrix
of the Estate of RALPH FANTACONE                                                    PLAINTIFF

v.                                             No. 6:18-cv-06117

CORRECT CARE SOLUTIONS, LLC; and
CORIZON HEALTH, Inc., a.k.a. CORIZON, LLC                                        DEFENDANTS

**ORDER**

Now before the Court is the Motion for Summary Judgment by Defendants Correct Care Solutions, LLC and Corizon Health, Inc. a.k.a. Corizon, LLC (ECF No. 104, filed Feb. 27, 2021). Defendants contend that Plaintiff's state law negligence claim is precluded as a matter of law. They further contend that Plaintiff has not identified a policy, custom or practice of Defendants to support a deliberate indifference claim under 42 U.S.C. § 1983; that Plaintiff is required to name an associate responsible for implementing the policy, custom or practice; and that dismissal of Plaintiff's state law negligence claim is dispositive of Plaintiff's § 1983 claim. Finally, Defendants contend that Plaintiff was required to produce the expert testimony of a pulmonologist to prove causation on Plaintiff's § 1983 claim. Plaintiff has filed a Response in Opposition of Defendants (ECF No. 146), and Defendants have replied (ECF No. 150). For the reasons set forth herein, the motion will be granted in part and denied in part.

I. **BACKGROUND**

The procedural and factual background of this case is long and involved. The facts are summarized as necessary to this decision and stated in a light most favorable to Plaintiff, the nonmoving party. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 525 (8th Cir. 2009). Plaintiff Martha McKee ("Plaintiff") is the personal representative of her brother, Ralph Fantacone ("Mr. Fantacone"), who suffered a chronic lung disease and died while serving a prison sentence within the Arkansas Department of Corrections ("ADC"). Defendant Corizon Health, Inc. ("Corizon") was the contract provider of medical services for inmates housed within

1

the ADC from January 1, 2004 through December 31, 2013. Corizon assisted the ADC in developing and writing the prison healthcare policies, procedures, and protocols utilized by the healthcare staff treating Mr. Fantacone and the other inmates.

Defendant Correct Care Solutions ("CCS") became the contract to provider of medical services to inmates in the ADC effective January 1, 2014. As part of the transition, Corizon supplied CCS with all previous documentation for the years that Corizon was the prison healthcare provider. When CCS took over, it was instructed by the ADC to use the same policies, procedures and protocols developed and implemented by Corizon. Effective January 1, 2014, all those working in the ADC prison health care system, including the doctors and nurses treating Mr. Fantacone and the other inmates, switched from being Corizon employees to being CCS employees.

Mr. Fantacone entered the ADC health care system in August 2012. On January 18, 2015, Mr. Fantacone died. An autopsy determined that Mr. Fantacone died of acute and chronic lung injury secondary to multifocal acute pulmonary capillaritis. (ECF No. 86-5). The parties dispute the circumstances leading to Mr. Fantacone's death. Both parties agree that Multifocal acute pulmonary capillaritis is a complicated medical matter concerning a sophisticated pulmonological condition for which expert testimony is needed. (ECF No. 79-5). Mr. Fantacone's medical case is outside the realm of lay understanding. *Id.*

Plaintiff provided the expert testimony of Nurse Michael McMunn, Dr. Richard S. Ellin, M.D. and Dr. Chokkalingam Siva, M.D. Plaintiff's experts testified to the standard of care. Based on the findings of an earlier chest CT, Dr. Ellin testified that Mr. Fantacone should have been referred to an outside medical provider to be seen by a pulmonologist or at least had a follow-up CT within two to three months. (Dr. Ellin Dep. 107:19–23, 124:17–19, ECF No. 138). Dr. Siva stated that more testing was needed, and that idiopathic pulmonary fibrosis, while difficult to treat, is treatable. (Dr. Siva Dep. 95:2–25, ECF No. 139). Dr. Ellin stated that a pulmonologist would have performed further diagnostic testing on Mr. Fantacone to determine the stage of his condition. (Dr. Ellin Dep. 151:14–21, ECF No. 138). He also stated that if Mr. Fantacone had been intubated and given oxygen on January 18, 2015, then he could have lived at least

another twenty-four hours, potentially longer. (*Id.* at 150:1–25). However, he said this is speculative and "very variable." (*Id.* at 151:1–6).

Defendants provided the expert testimony Dr. Ali Alnashif. Dr. Alnashif is a pulmonologist. He testified that an outside pulmonological referral would not have extended Mr. Fantacone's life and that there was no violation of the standard of care. (Dr. Alnashif Dep. 84:16 – 85:12, ECF No. 117). He testified that the CT scan showed idiopathic pulmonary fibrosis (scarring of the lungs of unknown origin). (*Id*. at 72:8–24). In his opinion, a physician who was not a pulmonologist would probably not be able to identify a lung condition from the CT scans. (*Id.* at 72:35 – 73:5). Mr. Fantacone's pulse ox (oxygen saturation) would not have been concerning to him until the day of his death. (*Id.* at 83:6–14). However, he testified that the CT scan was the earliest point that Mr. Fantacone was showing any signs of an underlying lung condition. (*Id.* at 83:17–20).

Dr. Alnashif stated that the only treatments available to treat pulmonary fibrosis in late 2014 was prednisone or steroids, but those sometimes-made patients worse off. (*Id.* at 85:13–19). There are two medications, Esbriet and Obev, that can treat pulmonary fibrosis. (*Id.* at 89:3–13). They were approved by the FDA in 2014, but Dr. Alnashif does not believe that any of his colleagues in Arkansas were using them before 2016. (*Id.* at 90:10–24). Mr. Fantacone's pulmonary fibrosis was probably repairable in 2009 or 2010. (*Id.* at 98:3–11). Dr. Alnashif could not state with certainty that Mr. Fantacone would have survived past the date of his death, but most people die within two years. (*Id.* at 99:11 – 100:18).

Corizon was reimbursed by the ADC on a monthly basis for services it provided within the prison system, but it had to pay for any off-site services. (Taylor Dep. 32:23 – 33:11, ECF No. 147-1). From August 2012 to December 31, 2013, Corizon was reimbursed at a rate of $356.66 per inmate within the prison system regardless of the number of inmates actually served. (*Id.* at 34:23 – 35:1). If Corizon fell behind in the care it was to provide inmates, it was to be penalized at a rate of $10,000 per day per facility as long as the backlog existed. (*Id.* at 39:19 – 41:16).

Corizon did not require its medical staff to have any specialized training to provide care to inmates. (*Id.* at 46:14–19). Corizon accounted for the money that was spent on off-site medical care. (*Id.* at 42:19–

22).  Corizon did not have a patient safety policy.  Instead, they audited records to make sure the processes were being followed.  (*Id.* at 55:8–25).

Corizon's policy for referring patients to offsite providers was at the physician's discretion based on his or her assessment.  (*Id.* at 73:11–15).  Corizon did not train its physicians on what procedures to follow in relation to offsite services, and it did not have protocols related to physician-patient care.  (*Id.* at 73:16 – 74:19).  Corizon did not create any policies related to referring patients to offsite procedures.  (*Id.* at 88:9–12).

Corizon left it up to the physician to determine if an inmate needed to be referred for a second opinion.  (*Id.* at 93:11–25).  Corizon did not train its staff on all the responsibilities under the contract.  (*Id.* at 97:20–22).  Corizon was responsible for paying for off-site services up to $5.6 million.  (Corizon Health Services Agreement at §6.3, ECF No. 147-3); (Sholey Dep. 31:24 –3 2:20, ECF No. 147-6).  When deciding what off-site provider to use, Corizon tried to find the most efficient pricing among available options.  (Sholey Dep. 18:16–19, ECF No. 147-6).  In 2012-13, Corizon made a profit on its contract to provide medical care to ADC inmates.  (*Id.* at 36:2–5).

Under its contract with the ADC, CCS saved money when it did not refer inmates to outside providers.  (*Id.* at 256:6–11).  Corizon and CCS did not require nurses to go to a correctional health-care specific training.  (Paul Dep. 65:9–12, ECF 147-15).

From 2012 to 2013, Corizon did not have a policy, procedure, or protocol in place governing communication between medical, nursing and behavioral staff.  (*Id.* at 68:9–14).  From 2014 to 2015, CCS did not have a policy in place governing communications among medical staff.  (*Id.* at 69:11–14).  Corizon did not have a policy in place for recurrent medical conditions.  (*Id.* at 70:7–9).  Neither Corizon nor CCS trained its nurses on the ACA standards of care for nurses providing care to inmates at ORCU.  (Fletcher Dep. 14:9–11, ECF No. 147-14); (Paul Dep. 65:2–8, ECF No. 147-15); (Smarjesse Dep. 24:16–18, ECF No. 147-16); (Shepherd Dep. 26:1–3, ECF No. 147-17).  Corizon and CCS did not train its nurses on the NCCHC standards applicable to the care they were providing.  (Fletcher Dep. 13:13–18, ECF No. 147-14); (Paul Dep. 64:16–23, ECF No. 147-15); (Smarjesse Dep. 23:20–24, ECF No. 147-16); (Shepherd Dep.

25:11–13, ECF No. 147-17).  Nurse practitioners employed by Corizon and CCS did not have to have their notes and treatment reviewed.  (McKinney Dep. 48:21–49:15, ECF No. 147-20).

In January 2014, David Henderson, a fellow inmate, observed that Mr. Fantacone was short of breath and heard him tell a physician assistant that he had pain in his chest and could not breathe. (Henderson Dep. 11:16–25, 12:1–11, ECF No. 147-22).  Medical records obtained from the ADC show several Health Services Encounters from early 2014 until his death in January 2015.  (*See* ECF Nos. 107–116).  They show a few complaints of recurrent sinus infections but virtually no Sick Call requests describes his serious breathing difficulties.  *Id.*

The motion before the Court is Defendant's fourth motion for summary judgment.  (ECF No. 104). The Court granted in part and denied in part Defendant's first motion for summary judgment, (ECF No. 41, filed Feb. 28, 2020), dismissing the negligence and deliberate indifference claims against Defendants Dr. Vowell and Dr. McKinney because all claims against them were barred by the statute of limitations.  (Mem. Op. and Order, ECF No. 49, filed June 10, 2020).  As a result, Dr. Vowell and Dr. McKinney were terminated as parties to this case.  *Id.*

On March 2, 2021, the Court granted in part and denied in part Defendants' second motion for summary judgment (ECF No. 78) and dismissed the negligence claim against Corizon based on the theory of *respondeat superior*.  (Order, ECF No. 142).  The Court denied Defendants' motion for summary judgment for lack of evidence supporting the civil rights claim because Plaintiff had produced expert evidence sufficient to create genuine issues of material fact on the issue of causation.[1]

The only remaining claims before the Court are the negligence claim on the theory of *respondeat superior* against CCS and the deliberate indifference claims against Corizon and CCS based on the companies' policies, customs, and alleged failures to train and supervise medical staff.

---

[1] The Court also denied Defendants' third motion for summary judgment (ECF No. 90, filed Dec. 28, 2020) that sought dismissal for lack of standing or, in the alternative, to stay all proceedings until the Circuit Court of Hot Spring County, Arkansas ruled on a motion to dismiss the underlying probate proceeding.  (Order, ECF No. 100, filed Jan. 12, 2021).

## II.  STANDARD OF REVIEW

The standard for summary judgment is well established. A party may seek summary judgment on a claim, a defense, or "part of [a] claim or defense." Fed. R. Civ. P. 56(a). When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

When deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III.  DISCUSSION

### A.  Medical Malpractice Claim Against Correct Care Solutions, LLC

Defendants argue that Plaintiff's Arkansas state law negligence claim against Correct Care Solutions, LLC should be dismissed because of the holding in *Magrans v. Andrada*, 2021 Ark. App. 35, 616 S.W.3d 668. (ECF No. 104, ¶6). At the time Defendants filed their motion for summary judgment (ECF No. 104), *Magrans* was an unpublished opinion, and the decision was appealed to the Arkansas Supreme Court.

Plaintiff argues that *Magrans* is not settled law, and the Court should not follow it. On April 5, 2021, Plaintiff filed her Response in Opposition of Defendants' Motion for Summary Judgment (ECF No. 146). However, the Arkansas Supreme Court denied the *Magrans* appellant's petition to review the Arkansas Court of Appeals decision on April 15, 2021, and the Court of Appeals decision was published. (ECF No. 150-1).

The parties do not dispute that the Court has supplemental jurisdiction to determine the merits of Plaintiff's state law negligence claim under 28 U.S.C. § 1367. (Plaintiff's Second Amended Complaint, ECF No. 28, ¶4, filed June 3, 2019; Defendants' Answer to Second Amended Complaint, ECF No. 37, ¶4, filed June 17, 2019). A federal court must apply state law when exercising jurisdiction over state law claims. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Because the Plaintiff brought a negligence claim under Arkansas state law, the Court is bound to apply Arkansas law.

In *Magrans*, the plaintiffs sued a doctor's employer for the doctor's allegedly negligent acts. In their original complaint, the plaintiffs did not name the doctor as a party. However, the plaintiffs later added the doctor as a party in an amended complaint. Following this addition, the court determined that the statute of limitations had tolled on the plaintiffs' claims against the doctor. The doctor was dismissed from the lawsuit. The doctor's employer then filed a motion for summary judgment on the grounds that an employer cannot be liable for an employee's actions when it is determined that the employee has no liability. Both the circuit court and the court of appeals agreed with the defendant employer and granted summary judgment as a matter of law.

In the case at bar, Plaintiff filed their initial complaint naming CCS, Corizon, Jane Does Nurses 1– 5 and John Does Doctors 6–10 as Defendants. (ECF No. 1, Filed Nov. 12, 2018). Plaintiff based her negligence claim against CCS on the theory of *respondeat superior.* On February 13, 2019, Plaintiff filed her first amended complaint but did not name Dr. Gregory McKinney and Dr. Nanette Vowell as parties to the lawsuit until she filed her second amended complaint (ECF No. 28). Subsequently on June 10, 2020, the Court found that the claims against CCS employees, Doctors McKinney and Vowell, were barred because the statute of limitations had run. (Order, ECF No. 49). According to *Magrans* and the common

law theory of vicarious liability, where the employee has no liability, the principal cannot be held liable. 2021 Ark. App. 35, at 13, 616 S.W.3d 668, 676–77.  Here, the Court found that Dr. McKinney and Dr. Vowell had no liability for the negligence claims filed against them.  Therefore, their employer, CCS, cannot be liable for their negligence.

In conclusion, *Magrans* directly supports Defendants' motion, and the claims against CCS based on the theory of *respondeat superior* are precluded as a matter of law and Defendants are entitled to summary adjudication of this issue in their favor.

### B.     Plaintiff's Deliberate Indifference Claims

#### 1.     Identifying a Policy, Custom or Practice of Defendants

Defendants argue that they are entitled to summary judgment as a matter of law because Plaintiff has failed to identify any policy, custom or practice of Defendants that caused the Mr. Fantacone any harm. It appears that they are not challenging Plaintiff's failure to supervise, train, and discipline medical personnel claims.  (*See* ECF Nos. 104, 140, 150).

The deliberate indifference standard contains both an objective and subjective element: (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it."  *Jones v. Minn. Dep't. of Corrs.*, 512 F.3d 478, 481 (8th Cir. 2008).  It does not appear that the parties are disputing whether or not Mr. Fantacone had an objectively serious medical need.  The only remaining question is whether Defendants were aware of and deliberately disregarded Plaintiff's medical need.

To maintain a § 1983 claim against a corporate entity, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury."  *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (discussing a § 1983 claim against a prison medical provider); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies.").

To establish the existence of an unconstitutional policy, Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the [corporate officer] who has final authority regarding such

matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question.'" *Hayes v. Faulkner Cnty., Ark.,* 388 F.3d 669, 674 (8th Cir. 2004) (quoting *Pembaur v. Cty. of Cincinnati*, 475 U.S. 469, 483–84 (1986)). A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights. *Russel v. Hennepin Cnty.*, 420 F.3d 841, 847 (8th Cir. 2005) (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)).

"A . . . custom involves a pattern of persistent and widespread . . . practices which become so permanent and well settled as to have the effect and force of law." *Brockinton v. Cty. of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). To establish the existence of a custom, a plaintiff must demonstrate:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the . . . entity's employees;
(2) Deliberate indifference to or tacit authorization of such conduct by the . . . entity's policymaking officials after notice to the officials of that misconduct; and
(3) That plaintiff was injured by acts pursuant to the . . . entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). Under this standard, "multiple incidents involving a single plaintiff could establish a custom if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Johnson v. Douglas Cnty. Med. Dept.*, 725 F.3d 825, 829 (8th Cir. 2013).

Plaintiff alleges that Corizon and CCS showed deliberate indifference when they: (1) failed to develop and implement policies, practices, and procedures to ensure the decedent would receive appropriate care for serious illness and, if necessary, outside services; (2) failed to have properly trained staff to deliver medical services for serious illnesses and failed to provide outside medical services; (3) failed to properly train, supervise and discipline its medical personnel to ensure inmates would receive appropriate care for serious illnesses; and (4) entered a contractual agreement that required it to pay for outside medical services

9

that created a financial disincentive for medical staff to send an inmate for outside medical services. (ECF No. 146). In support of these allegations, Plaintiff argues that there was a policy and a custom, that Defendants allowed its nurses to follow nursing protocols, i.e., no-standard protocol, that were not authorized and resulted in substandard care to inmates, Defendants failed to comply with ADC Policies 507, 511, and 512, failed to implement its own policies to adhere to the requisite standards, and had a general culture of providing substandard care to inmates. (ECF NO. 146, at 27). To support this proposition, Plaintiff references her statement of undisputed facts (ECF No. 147).

Defendants had the same response to nearly all of Plaintiff's statements of undisputed fact on the policy, custom, or practice issue. In sum, most of Defendants' responses do not admit or deny the facts Plaintiff presented because they are immaterial. (ECF No. 151, at 26–27). Defendants argue that these facts are immaterial because Plaintiff's experts are not qualified to offer testimony on causation. The Court will fully address this issue in this order. However, Defendants are not entitled to summary judgment on this argument. The Court finds that Plaintiff's evidence is sufficient to create a genuine issue of material fact whether Corizon and CCS had a policy, custom or practice that caused Mr. Fantacone's death. Accordingly, the motion for summary judgment should be DENIED on the policy, custom or practice issue.

## 2.     Named Defendant

Defendant cites to *Corwin v. Cty. of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (citing *McCoy v. Cty. of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005)) to support their contention that there must be a named defendant liable for a violation for liability to attach to the entity. In *McCoy*, the Court stated, "[t]his circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." 411 F.3d at 922.

It is well settled that when a private corporation acts under color of state law, it can be held liable under § 1983 for its own policies, customs and practices. *Sanders*, 984 F.2d 972, 975–76. The Court finds as a matter of law that Plaintiff did not have to include an associate named defendant to maintain her deliberate indifference claims against Corizon and CCS. Defendants have not carried their burden to show

10

that they are entitled to judgment as a matter of law. Accordingly, the motion for summary judgment on this issue should be DENIED.

### 3. Negligence

As the Court understands Defendants' argument, it appears that Defendants are arguing that since the state law medical malpractice claims against Doctors Vowell and McKinney have been dismissed, the § 1983 deliberate indifference claims against the employer(s) should be also dismissed as a matter of law. Defendants do not cite any authority to support this proposition. Plaintiff argues that if a finding of medical malpractice is precluded under Arkansas law, then the Court should not find that the deliberate indifference claims should be dismissed because medical malpractice is not actionable under the Eighth Amendment. (ECF No. 146, at 35).

Medical malpractice alone is not actionable under the Eighth Amendment. *Smith v. Clarke,* 458 F.3d, 720, 724 (8th Cir. 2006). There are clear distinctions between the elements and standards applicable to a state law claim of medical malpractice and those applicable to a Constitutional civil rights claim of deliberate indifference. Therefore, there is no basis to say that a dismissal of a medical malpractice claim should result in the dismissal of a deliberate indifference claim. The Court finds that Defendants have not carried their burden to show that they are entitled to judgment as a matter of law. Therefore, the motion for summary judgment should be DENIED on this issue.

### C. Expert Testimony

Defendant points to the fact that Plaintiff did not produce expert testimony from a pulmonologist to support her claim. (ECF No. 104, ¶10). Defendants claim that Plaintiff is required to produce this type of expert testimony because Mr. Fantacone passed away from multifocal acute pulmonary capillaritis, a pulmonary condition. Defendants previously filed a motion for summary judgment (ECF No. 78) on this issue, and the Court denied the motion (ECF No. 142). The Court denied Defendants' motion because they had not carried their burden to show that there is no genuine issue of material fact regarding causation and found that they are not entitled to judgment as a matter of law. (*Id.* at 12).

It appears that the Defendants are arguing that since they have offered the expert opinion of Dr. Ali Alnashif, a pulmonologist, who testified that there was no treatment available to Mr. Fantacone, Plaintiff must also present expert testimony from a pulmonologist. In sum, they are arguing that Plaintiff received the care in compliance with the appropriate standard of care, and there were no actions that medical staff could have taken to prevent his death. According to the Defendants, Plaintiff has not put forth evidence to rebut the opinion of Dr. Alnashif.

Under Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"[D]istrict courts are admonished not to weigh or assess the correctness of competing expert opinions." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014). As long as the expert's scientific testimony rests upon "good grounds, based on what is known" it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590, (1993).

"Rule 702 does not require a defense medical expert to be of the identical medical specialty as the plaintiff's expert." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *U.S. v. Cawthorn,* 429 F.3d 793, 799 (8th Cir. 2005), *vacated on other grounds*, 552 U.S. 1136 (2008).

Here, Defendant's expert, Dr. Ali Alnashif, is a pulmonologist. Dr. Alnashif contends that no additional care would have saved Mr. Fantacone. Plaintiff's experts are an internist, Dr. Richard Ellin, and a rheumatologist, Dr. Chokkalingam Siva. Doctors Ellin and Siva contend that an outside referral to a pulmonologist would have saved Mr. Fantacone. Defendant asks the Court to dismiss this action because Plaintiff's are required to offer the expert of a pulmonologist to testify about Mr. Fantacone's

pulmonological condition. This contention is not supported by FRE 702 or case law. Defendants have not carried their burden to show that they are entitled to judgment as a matter of law. Accordingly, the motion for summary judgment should be DENIED for lack of expert testimony.

### D.      Defendants' Additional Arguments

Defendant's reply brief raises several arguments that were not raised in their motion for summary judgment. The Court need not address these challenges because they are not properly before the Court. Federal Rule of Civil Procedure 7 "is a general rule that applies to all motions." *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 793 (8th Cir. 2003). A motion for a court order must "be in writing unless made during a hearing or trial, state with particularity the grounds for seeking the order, and state the relief sought." Fed. R. Civ. P. 7(b)(1).

A request for court action, made in briefing papers or other non-motion documents, is procedurally deficient and not properly presented to the Court for consideration. *See Ivers v. CMFG Life Ins. Co.*, No. CV 15-1577 (WMW/BRT), 2016 WL 5796919, at *8 (D. Minn. Aug. 12, 2016) (stating that a request made in a reply brief does not constitute a motion)*; see also Fitzgerald v. Zakheim & LaVrar, P.A.*, 90 F. Supp. 3d 867, 873 n.3 (D. Minn. 2015) (declining, without analysis, a request for court action that was made in a response brief opposing a motion). Therefore, Defendants' additional arguments are not properly before the Court, and the Court declines to address them at this time.

### IV.     CONCLUSION

Corizon and CSS's motion for summary judgment should be **GRANTED** in part and **DENIED** in part:

1.      The motion for summary judgment on Plaintiff's state law negligence claim against CCS is **GRANTED** as a matter of law, and the claim should be and hereby is **DISMISSED**.

2.      The motion for summary judgment for lack of identifying a policy, custom or practice supporting Plaintiff's § 1983 Deliberate Indifference claim is **DENIED** because Plaintiff has produced evidence sufficient to create a genuine dispute of material fact.

      3.      The motion for summary judgment for lack of an associated named defendant liable for implementation of a policy, custom or practice is **DENIED** as a matter of law.

      4.      The motion for summary judgment for a finding that Plaintiff's § 1983 Deliberate Indifference claim is precluded by a dismissal of Plaintiff's state law negligence claims is **DENIED** as a matter of law.

      5.      The motion for summary judgment for lack of expert testimony is **DENIED** as a matter of law.

This case remains set for jury trial **July 19, 2021** in Hot Springs, Arkansas.

The Defendants are reminded that settlement conferences have proven to be beneficial to the parties even if settlement is not achieved. The request for a settlement conference should be made to the Court no later than 30 days prior to the trial date. The parties are strongly encouraged to participate in a settlement conference prior to the trial date.

**IT IS SO ORDERED** this 26th day of May 2021.

*/s/ Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**